**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 12-cv-03344-MSK-BNB

**RAUL PERMUY CALDERON,**

      **Plaintiff,**

**v.**

**TIMOTHY HAND;
MICHAEL PASKO; and
JOHN AND JANE DOES 1-3,**

      **Defendants.**

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to Defendants' Motion to Dismiss

(**# 29**) and Plaintiff Raul Calderon's response (**# 30**).  Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

## I.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II.  ISSUE(S) PRESENTED

In his Second Amended Complaint[1] (**#13**), Mr. Calderon asserts a claim under 42 U.S.C.

§ 1983 for denial of his procedural due process rights for Defendants' failure to provide adequate

notice prior to revoking his parole.  He also asserts a state law claim for negligent infliction of

emotional distress.

---

[1]     Mr. Calderon captions this document as a "First Amended Complaint," but in actuality, it is his second amendment to his initial pleading, following his initial Complaint (**# 1**) and an Amended Complaint (**# 5**).

In the Motion to Dismiss, Defendants argue that: (1) Defendants are immune from suit to the extent they are sued in their official capacities; (2) with regard to the § 1983 claim, Mr. Calderon fails to adequately allege personal participation by Defendants in any constitutional deprivation; (3) Defendants are entitled to qualified immunity on the § 1983 claim; and (4) Defendants are entitled to immunity under the Colorado Governmental Immunity Act on the state law claim.

### III. FACTS

The following facts are derived from the Second Amended Complaint.  In 2010, Mr. Calderon completed a sentence of incarceration with the Colorado Department of Corrections, and commenced a term of parole.  Following a hearing on January 17, 2012, the Colorado Division of Adult Parole ("Parole Board") revoked that parole.[2]  Mr. Calderon alleges that he did not receive a copy of the parole revocation complaint before the hearing on January 17, 2012.  At the time, Mr. Pasko was the Community Parole Officer assigned to Mr. Calderon, and Mr. Hand was the Director of the Parole Board.

Mr. Calderon filed a challenge in state court to the sufficiency of the notice he received in advance of the January 17 hearing.  On December 17, 2012, a state court judge found that Mr. Calderon had not received advance notice of the revocation complaint, that such lack of notice violated C.R.S. § 17-2-103(6)(a), and directed that Mr. Calderon be (re-)released on parole.  Mr. Calderon was released from custody on December 25, 2012.  He alleges that, during the period from January 17 to December 25, 2012 when he was in custody, he was assaulted by other inmates and required medical care.

---

[2]     It appears from the Second Amended Complaint that this parole revocation occurred at a time when Mr. Calderon was already incarcerated, but the Second Amended Complaint does not elaborate on Mr. Calderon's circumstances at the time.

## IV.  ANALYSIS

### A.  Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50.  The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51.  What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B. Section 1983 Claims**

It is unclear from the Second Amended Complaint whether Mr. Calderon asserts his claims against the Defendants in their individual and/or official capacities.  The Defendants move to dismiss all claims against them in either capacity.

**1.  Official Capacity Claims**

The Defendants argue that any claims brought against them in their official capacities must be dismissed because such claims are barred under the Eleventh Amendment.  Mr. Calderon concedes that Eleventh Amendment immunity bars any claims against the Defendants in their official capacities and he asserts that he intended only to assert claims against the Defendants in their individual capacities.  Because Mr. Calderon disclaims any intention to bring official capacity claims against the Defendants, the Defendants' request to dismiss such official capacity claims is denied as moot.

**2.  Individual Capacity Claims**

In general, a § 1983 claim alleging a deprivation of Due Process requires allegations that each Defendant deprived Mr. Calderon of a constitutionally-protected liberty or property interest without observing the requisite procedural protections.  In addition, an essential element of any section 1983 claim is an allegation that each named Defendant personally participated in the constitutional deprivation. *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010).

Mr. Calderon alleges that the Defendants failed to provide him with the procedural protections required by state statute when seeking to revoke his parole.  Under Colorado law, to effectuate a parole revocation, a community parole officer files a parole revocation complaint with the Parole Board.  C.R.S. § 17-2-103(5)(a).  A copy of that complaint "shall be given to the parolee a reasonable length of time before any parole board hearing."  § 17-2-103(6)(a).  The

statute further requires that "[p]rior to appearance before the board, a parolee shall be advised in writing by the director of the division of adult parole concerning the nature of the charges that are alleged to justify revocation of parole and the substance of the evidence sustaining the charges [and] the parolee shall be given a copy of the complaint unless he or she has already received one."  C.R.S. § 17-2-103(8).

Mr. Calderon alleges that these statutes required both Mr. Hand and Mr. Pasko to serve him with a copy of the parole revocation complaint prior to the January 17 hearing.  Turning first to the question of whether Mr. Hand personally participated in the deprivation of Mr. Calderon's state-created rights to advance notice, the statute provides that  a parolee "shall be advised in writing **by the director of the division of adult parole**" prior to a parole revocation hearing.  C.R.S. § 17-2-103(8) (emphasis added).  The director – Mr. Hand -- has a statutory duty to ensure that a parolee receives written notice of an impending parole hearing.  Mr. Calderon asserts that Mr. Hand was the director of the division of adult parole at the time of Mr. Calderon's parole revocation hearing.  Taken together, these allegations are sufficient to draw an inference that Mr. Hand was obligated to provide Mr. Calderon with a copy of the parole complaint, and that his failure to do so constitutes personal participation in the alleged constitutional deprivation.

However, the situation is somewhat different for Mr. Pasko, the Community Parole Officer overseeing Mr. Calderon.  C.R.S. § 17-2-103(6)(a) requires that "[a] copy [of the revocation complaint] shall be given to the parolee a reasonable length of time before any parole board hearing."  § 17-2-103(6)(a).  Although the statute clearly creates the parolee's right to receive a copy of the parole revocation complaint, it does not clearly create a duty for a particular public official to deliver that copy.   Admittedly, the bulk of C.R.S. § 17-2-103(3)-(6) refers to

5

specific actions that a Community Parole Officer takes in initiating a parole revocation proceeding.  However, the specific sentence in C.R.S. § 17-2-103(6)(a) that directs  service of a revocation complaint on a parolee is written in the passive voice and does not specific who is obligated to serve the complaint.

The statute appears to contemplate that the revocation complaint (which the Community Parole Officer is required to sign, C.R.S. §17-2-103(6)(a)) will be "filed" by the Parole Officer with some entity (presumably the Parole Board), C.R.S. § 17-2-103(6)(a).  At some point prior to the parole hearing, the Director of the Parole Board is required to "give[ ] a copy of the complaint [to the parolee] unless he or she has already received one."  C.R.S. § 17-2-103(8). This language suggests that the obligation in C.R.S. § 17-2-103(6)(a) to serve the parolee with a copy of the revocation complaint is an obligation that falls on the entity with which that complaint is filed, or perhaps with the Director of the Parole Board, rather than an obligation owed to the parolee by the Community Parole Officer.  Under these circumstances, the Court finds that the final sentence of C.R.S. § 17-2-103(6)(a) is ambiguous with regard to who has the obligation to serve the parolee with a copy of the revocation complaint.  Thus, the Court cannot say that Mr. Calderon's failure to receive a copy of the revocation complaint was a result of  Mr. Pasko's violation of statutory obligations under C.R.S. § 17-2-103(6)(a).  Thus, unlike the Mr. Hand, the absence of delivery of the complaint is not sufficient to show personal participation (or failure to perform a duty) by Mr. Pasko.

### 3. **Qualified Immunity**

When section 1983 claims for monetary relief are brought against state employees in their individual capacities, the employees may be shielded from liability by the doctrine of qualified immunity. *See Johnson v. Fankell,* 520 U.S. 911, 914, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997); *McFall v. Bednar,* 407 F.3d 1081, 1087 (10th Cir. 2005). Qualified immunity protects government officials who perform discretionary government functions from liability for civil damages, provided that their conduct does not violate clearly established rights of which a reasonable government official would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to meet a two-part test. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Green v. Post,* 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that he or she had a constitutional right that was infringed, and that such right was clearly established at the time of the alleged infringement. Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan,* 555U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009); *Green,* 574 F.3d at 1299.

In the context of a motion to dismiss, the determination of whether a complaint asserts a constitutional violation is made pursuant to the Rule 12(b)(6) standard discussed above. *See Robbins v. Okla. ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1249 (10th Cir. 2008). Thus, the same analysis employed above for personal participation applies to the first prong of qualified immunity. Thus, Mr. Pasko would be entitled to qualified immunity based on Mr. Calderon's failure to state a cognizable constitutional claim against him, but Mr. Hand would not.

Turning to the "clearly established" prong, the determination of a whether a constitutional right has been clearly established is made in a "particularized sense" based on the specific facts of the case. *Brosseau v. Haugen,* 543 U.S. 194, 199–200 (2004). Whether the law was clearly established is essentially a legal question and is measured by an objective standard. *See Crawford–El v. Britton,* 523 U.S. 574, 589–90 (1998).  The law is clearly established if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right. *Moore v. Guthrie,* 438 F.3d 1036, 1042 (10th Cir. 2006). When faced with an invocation of the doctrine of qualified immunity, the burden is on the Plaintiff to demonstrate that a constitutional right was "clearly established," by citing to precedent from the United States Supreme Court, the 10th Circuit, or the weight of authority from other circuit courts recognizing that right in the particular circumstances presented.  *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007).

As discussed above, Mr. Calderon has shown that his right to receive adequate notice of his parole revocation hearing was infringed by Mr. Hand because the plain language of the law imposes an unambiguous duty upon the director of the division of adult parole to give advance notice in writing to parolees of such hearings.  Given the clear statutory language, a reasonable official in Mr. Hand's circumstances would understand that he had a duty to provide Mr. Calderon with written notice and his failure to do so would violate Mr. Calderon's due process rights.  Because Mr. Calderon's right to receive a copy of the parole revocation complaint from Mr. Hand was clearly established, Mr. Hand is not entitled to qualified immunity

By contrast, as noted above, the Court has already concluded that any statutory language imposing an obligation on the Community Parole Officer to provide the parolee with a copy of the revocation complaint is ambiguous.  By definition, then, that right of a parolee to have a copy

of the revocation complaint delivered to him by a Community Parole Officer cannot be "clearly established."  Notably, Mr. Calderon does not cite to any precedent from any federal or state court finding that C.R.S. § 17-2-103(6)(a)'s duty to serve a copy of the revocation complaint is a duty imposed on the Community Parole Officer.  Accordingly, Mr. Calderon has also failed to show that any alleged constitutional violation committed by Mr. Pasko was "clearly established."

### 4.  Leave to amend

This Court determined above that Mr. Calderon's complaint did not allege sufficient facts to support an inference of Mr. Pasko's personal participation.  Mr. Calderon requests that, if the Court is inclined to grant any Defendant's motion to dismiss, that he be permitted to amend his complaint to plead a sufficient factual basis.  However, because the Court has concluded that C.R.S. § 17-2-103(6)(a) is ambiguous as to whether the duty to serve the revocation complaint falls on the Community Parole Officer, or someone else, even if this Court granted Mr. Calderon's request for leave to amend, Mr. Calderon has not shown that he can allege any facts that would state a viable claim.  Moreover, because the Court has found that Mr. Calderon has failed to show that this right was clearly established as to Mr. Pasko, Mr. Pasko would be entitled to dismissal of any amended claim against him on the grounds of qualified immunity in any event.   Thus, amendment would be futile.

### C.  State Law Claim

Defendants assert that Mr. Calderon's claim for negligent infliction of emotional distress under state law is barred by the Colorado Governmental Immunity Act (CGIA).

Under Colorado law, a plaintiff alleging negligent infliction of emotional distress must plead facts showing that "the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had

physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496–97 (Colo. App. 2011). A plaintiff must also demonstrate "that he or she suffered physical injury or was in the 'zone of danger.'"[3] *Id.*at 497.

Under the CGIA, public employees are generally immune from liability in tort claims based on conduct that occurs within the scope of their employment. C.R.S. § 24-10-118(2)(a). This general immunity is subject to a host of exceptions and waivers, however. Among other things, public employees may be liable in tort for conduct involving " injuries resulting from: . . . [t]he operation of any . . . correctional facility," C.R.S. § 24-10-106, or for conduct that is "willful and wanton," C.R.S. § 24-10-118(2)(a).

Mr. Calderon's negligent infliction of emotional distress claim is tortious in nature, Mr. Hand and Mr. Pasko are indisputably public employees, and it is undisputed that the actions giving rise to Mr. Calderon's claim – the Defendants' failure to provide him with advance notice of his parole hearing – occurred within the scope of their employment. Therefore, the Defendants are entitled to immunity under the CGIA unless Mr. Calderon can show that an exception to or waiver of that immunity applies.

Mr. Calderon first asserts that the CGIA does not bar his claim because the injuries he complains of arise out of the operation of a correctional facility. The waiver of immunity for operation of a correctional facility "encompasses only defendants' acts or omissions in

---

[3]     The Court has some doubt that a claim of negligent infliction of emotional distress is even cognizable in the circumstances presented here. Mr. Calderon seems to believe that the Defendants' negligence in failing to provide him with statutory notice of his revocation hearing caused his parole to be revoked, which in turn caused him to be incarcerated, which in turn exposed him to the risk (and actuality) of assault by other inmates during such incarceration. Such a theory presents profound, and potentially insurmountable, issues of causation (among others), but because the Defendants move to dismiss the claim only on immunity grounds, the Court need not reach the question of Mr. Calderon can state a claim for negligent infliction of emotional distress under these facts in any event.

exercising the powers, duties, and functions vested in them by law **with respect to the purpose of the facility**." *See Pack v. Arkansas Valley Correctional Facility*, 894 P.2d 34, 37 (Colo. App. 1995) (emphasis in original).  By definition, then, the waiver only applies to tortious conduct alleged against a defendant who is involved in the "operation" of a correctional facility.  Here, although the actions by the Defendants (or other members of the Parole Board) may have the consequence of parolees being confined to a correctional facility, there are no facts in the Second Amended Complaint that permit an inference that the Defendants  are involved in the "operation" of any correctional facility.  Therefore, C.R.S. § 24-10-106 does not operate to waive the Defendants' immunity under the CGIA for Mr. Calderon's tort claim.

Mr. Calderon also asserts that Defendants are not entitled to CGIA immunity because their conduct was "willful and wanton."  His complaint supports this assertion with conclusory statements that "Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious," but he does not plead any particular facts that would support this conclusion.

## V.  CONCLUSION

**IT IS THEREFORE ORDERED** that

(1) Defendants' Motion to Dismiss **(#29)** is **GRANTED IN PART**, insofar as all claims against Mr. Pasko are **DISMISSED**, and the negligent infliction of emotional distress claim against Mr. Hand is **DISMISSED**, and **DENIED IN PART.**

(2) Only the 1983 claim against Mr. Hand will proceed.

DATED this 13th day of February, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge
United States District Court